## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| REAL INDUSTRY, INC., *et al.*[1] | ) Case No. 17-12464 (KJC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) **Ref. Docket Nos. 85 and 149** |

### ORDER (I) ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALE OF ASSETS, (II) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, (III) ESTABLISHING PROCEDURES IN CONNECTION WITH THE SELECTION AND PROTECTIONS AFFORDED TO ANY STALKING HORSE BIDDERS, (IV) APPROVING FORM AND MANNER OF NOTICE RELATING THERETO, (V) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Real Industry, Inc. ("Real Industry") and its affiliated debtors and debtors-in-possession (the "Real Alloy Debtors," and with Real Industry, collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") for entry of an order, pursuant to sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 6004-1 and 9013-1: (i) approving the proposed auction (the "Auction") and bidding procedures attached hereto as **Exhibit 2** (the "Bidding Procedures") for the sale of the Real Alloy Debtors' assets (the "Assets"), (ii) establishing procedures for the assumption and assignment of executory contracts

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Real Industry, Inc. (3818), Real Alloy Intermediate Holding, LLC (7447), Real Alloy Holding, Inc. (2396), Real Alloy Recycling, Inc. (9798), Real Alloy Bens Run, LLC (3083), Real Alloy Specialty Products, Inc. (9911), Real Alloy Specification, Inc. (9849), ETS Schaefer, LLC (9350), and RA Mexico Holding, LLC (4620). The principal place of business for the Real Alloy Debtors is 3700 Park East Drive, Suite 300, Beachwood, Ohio 44122.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"), (iii) establishing procedures in connection with the selection of Stalking Horse Bidders (as defined below) and procedures for approval of any Bid Protections (as defined below), (iv) approving the form and manner of notice of all procedures, protections, schedules, and agreements, and (v) scheduling a hearing (the "Sale Hearing") to approve such sale (the "Sale," and such transaction, the "Sale Transaction"); and upon the record of the hearing on this Motion (if any); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Real Alloy Debtors' estates, their creditors, and other parties in interest and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted by this Order, it is hereby

ny-1308136
24191994.1 12/15/2017

**FOUND, CONCLUDED, AND DETERMINED THAT**[3]**:**

A.    The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the Bidding Procedures, as set forth herein, (ii) approve Assumption and Assignment Procedures, as set forth herein, (iii) approve procedures in connection with the selection of Stalking Horse Bidders and procedures for the approval of any Bid Protections, (iv) approve the form and manner of notice of all procedures, protections, schedules, and agreements, and (v) schedule a Sale Hearing.

B.    Notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Order complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

C.    The Debtors' proposed notices, in the forms attached hereto, of (i) the Sale Transaction, (ii) the assumption and assignment of, and Cure Amounts (as defined below) for, the executory contracts and unexpired leases to be assumed and assigned to any Successful Bidder, (iii) the Auction, (iv) the Bid Deadline, (v) the Successful Bidder, and (vi) the Bidding Procedures, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each, and no further notice of, or hearing on, each is necessary or required, except as expressly set forth herein.

D.    The Bidding Procedures, substantially in the form attached hereto as **<u>Exhibit 2</u>**, and incorporated herein by reference as if fully set forth in this order, are fair, reasonable, and

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

ny-1308136
24191994.1 12/15/2017

represent the best method for maximizing the value of the Real Alloy Debtors' estates in connection with the Sale.

  E.  The Assumption and Assignment Procedures as modified herein are reasonable and appropriate.

  **IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:**

  1.  The Motion is GRANTED, as set forth herein.

  2.  Any objections to the Motion and the relief granted herein, to the extent not resolved as set forth herein or on the record at the hearing on the Motion, are hereby overruled.

  3.  The Bidding Procedures, as attached hereto as **Exhibit 2**, are approved.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.

### Procedures for the Designation of a Stalking Horse Bidder and Approval of Bid Protections

  4.  The Debtors, in consultation with the DIP ABL Agent, the DIP Collateral Trustee, the Required DIP Noteholders (each as defined in the DIP Order (as defined below)), and the Creditors' Committee (collectively, the "Consultation Parties"), may (a) select one or more parties to act as a Stalking Horse Bidder for up to substantially all of the Assets (or any portion of the Real Alloy Debtors' assets), (b) negotiate the terms of and enter into one or more purchase agreement(s) with any Stalking Horse Bidder (a "Stalking Horse Agreement") (subject to higher or better bids as contemplated herein), and (c) negotiate bid protections, including a break-up fee (the "Break-Up Fee"), reimbursement of all or a portion of the Stalking Horse Bidder's reasonable fees and expenses (the "Expense Reimbursement"), and/or an initial overbid increment over the total purchase price guaranteed by such Stalking Horse Bidder (the "Overbid Protection" and together with the Break-Up Fee and the Expense Reimbursement, the "Bid

4

Protections"), if necessary, which Bid Protections shall be subject to approval of the Court upon a motion on notice and an opportunity for any party in interest (including, without limitation, the Consultation Parties) to object as set forth below; *provided*, that no insider or affiliate of the Debtors shall be entitled to any Bid Protections, and the rights of all parties in interest to object to any proposed Bid Protections are fully reserved; *provided, further*, that no payment of any such Bid Protections shall be permitted without the consent of (a) the DIP ABL Agent (while the DIP ABL Obligations (as defined in the DIP Order) or commitments remain outstanding), or (b) the DIP Collateral Trustee and the Required DIP Noteholders (in each instance, while the DIP Notes Obligations (as defined in the DIP Order) or commitments remain outstanding), and, in any event, the Prepetition Secured Parties' and DIP Secured Parties' (each as defined in the DIP Order) rights with respect to any Bid Protections are reserved.

5.      If the Debtors seek to provide Bid Protections for any Stalking Horse Bidder, the Debtors shall file a supplement to the Motion (a "Supplemental Motion") seeking approval of the same and serve such Supplemental Motion by February 5, 2018 on the Consultation Parties, the U.S. Trustee, and any party that has requested notice pursuant to Bankruptcy Rule 2002, with no further notice being required; *provided*, that such Supplemental Motion shall set forth the material terms of such Stalking Horse Bid, the proposed Bid Protections, and the purchase agreement with such Stalking Horse Bidder.  If no objections to such Supplemental Motion are filed and served on the Debtors within ten (10) calendar days after service of such Supplemental Motion (the "Bid Protections Objection Deadline"), the Debtors shall be entitled to immediately file a certificate of no objection with the Court, after which the Court may enter an order approving the Bid Protections requested by such Supplemental Motion.  If necessary, an expedited hearing to consider the Bid Protections requested by any Supplemental Motion and

ny-1308136
24191994.1 12/15/2017

objections thereto shall be held on **February 20, 2018 at [●] (prevailing Eastern Time)**.  For the avoidance of doubt, no determination is made in this Order with regards to authorizing any Bid Protections.

6.     The Debtors will file and serve upon the Transaction Notice Parties (defined below) a notice of entry into any Stalking Horse Agreement(s) (a "Stalking Horse Notice") by the date that is two (2) business days after the Court enters an order with respect to any Supplemental Motion (the "Stalking Horse Notice Deadline"); *provided*, that if the Debtors do not file a Supplemental Motion, the Stalking Horse Notice Deadline shall be February 15, 2018. The Stalking Horse Notice will include any Stalking Horse Agreement(s), set forth the terms of any Bid Protections to be given to any Stalking Horse Bidder(s), and be served upon: (a) all entities known to have expressed an interest in a transaction with respect to all or any portion of the Assets during the past eighteen (18) months; (b) all entities known to have asserted any interest in or upon all or any portion of the Assets; (c) all federal, state and local regulatory authorities or recording offices that are reasonably known to regulate any part of the business of the Real Alloy Debtors; (d) the Internal Revenue Service and all state and local taxing authorities in states in which the Real Alloy Debtors are reasonably known to have tax liability; (e) the Creditors' Committee; (f) the parties included on the Debtors' list of thirty (30) largest unsecured creditors; (g) those parties who have made the appropriate filings requesting notice of all pleadings filed in the Chapter 11 Cases; (h) the U.S. Trustee; (i) Wilmington Trust, N.A.; (j) counsel to the Ad Hoc Noteholder Group; (k) counsel to the DIP ABL Agent; (l) the United States Environmental Protection Agency; (m) the Securities and Exchange Commission; (n) the Office of the United States Attorney General for the District of Delaware; (o) the offices of the attorneys general for the states in which the Debtors operate; and (p) the United States

ny-1308136
24191994.1 12/15/2017

Department of Justice (the "Transaction Notice Parties"), with no further notice being required. The Debtors shall file and serve upon the Transaction Notice Parties (x) a proposed form of sale order with respect to any Stalking Horse Bid, and (y) if the Debtors have not selected a Stalking Horse Bid, a proposed form of asset purchase agreement, in each case, at least fourteen (14) calendar days prior to the Sale Objection Deadline (as defined below).

7.      Subject to the terms of the DIP Order, including the milestones set forth therein, in consultation with the Consultation Parties, the Debtors shall have the right to (a) extend or waive any deadline to submit non-binding indications of intent or proposed Stalking Horse Bids, (b) extend the Stalking Horse Notice Deadline, as applicable (*provided*, that such deadline may also be extended by the Debtors and Required DIP Noteholders (and, as applicable, DIP ABL Agent) consistent with the DIP Order), and (c) conduct the Auction without any Stalking Horse Bidder.

8.      Schedules to the Stalking Horse Agreement must be filed and served on the Transaction Notice Parties no later than fourteen (14) calendar days prior to the Sale Objection Deadline (as defined below), but may be amended or supplemented by the Debtors at any time prior to closing of the Sale Transaction.  All amendments to the schedules to the Stalking Horse Agreement must be filed no later than one (1) business day after such amendments are finalized. The rights of all parties-in-interest to object to any such amendments are reserved; *provided*, that any such objections must be filed and served on the Consultation Parties no later than ten (10) calendar days after the applicable amendment is filed.

### Notice Procedures

9.      Copies of this Order and the attached Bidding Procedures shall be served by first class mail no later than three (3) business days after entry of this Order upon the Transaction Notice Parties.

ny-1308136
24191994.1 12/15/2017

10.    On or before the date that is two (2) business days after the Stalking Horse Notice Deadline (such date, the "Mailing Date"), in accordance with Bankruptcy Rule 2002(a) and (c), the Debtors shall serve the auction and sale notice (the "Auction and Sale Notice"), substantially in the form attached hereto as **Exhibit 3**, by first-class mail, postage prepaid, upon the Transaction Notice Parties, all other known creditors of the Real Alloy Debtors, and all counterparties to executory contracts and unexpired leases with the Real Alloy Debtors.

11.    The Auction and Sale Notice shall indicate that copies of the Motion, this Order, the Bidding Procedures, the Stalking Horse Agreement, all exhibits and schedules thereto, the Auction and Sale Notice, the Contracts Schedule, and certain other documents relevant to the Sale Transaction can be obtained on a website maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, under the section titled "Sale of Real Alloy Debtors' Assets," which can be found at www.primeclerk.com/realindustry/.   The Auction and Sale Notice will also indicate the deadlines for objecting to a Sale to the Stalking Horse Bidder or a Successful Bidder other than the Stalking Horse Bidder and the date and time of the Sale Hearing.  In addition, the Auction and Sale Notice shall provide notice that the Debtors will seek to assume and assign certain executory contracts to be identified in accordance with the Assumption and Assignment Procedures (as described further below) at the Sale Hearing.  Such notice shall be sufficient and proper notice of the Sale Transaction with respect to known interested parties.

12.    The Debtors shall also publish a notice of the proposed Sale Transaction, in substance substantially similar to the Auction and Sale Notice, in American Metal Market Daily on or before the Mailing Date or as soon as practicable thereafter.  Such publication notice shall be sufficient and proper notice of the Sale Transaction to any other interested parties whose identities are unknown to the Debtors.

8

### The Bid Deadline

13.     Qualified Bids must be received in writing on or before 4:00 p.m. (prevailing Eastern time) on March 19, 2018 (the "Bid Deadline"), or such later date as may be determined by the Debtors, in consultation with the Consultation Parties, and served on: (a) the Debtors, 3700 Park East Drive, Suite 300, Beachwood, Ohio 44122; (b) proposed co-counsel for the Debtors, Morrison & Foerster LLP, 250 West 55th Street, New York, New York 10019, Attn: Gary S. Lee (glee@mofo.com), Jennifer L. Marines (jmarines@mofo.com), Mark A. Lightner (mlightner@mofo.com) and Benjamin W. Butterfield (bbutterfield@mofo.com), and Saul Ewing Arnstein & Lehr LLP, 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn. Monique B. DiSabatino (monique.disabatino@saul.com); (c) investment banker for the Debtors, Jefferies LLC ("Jefferies"), 520 Madison Avenue, New York, NY 10022 Attn: Robert White; (d)(i) counsel to the Ad Hoc Noteholder Group, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn: Rick Levy (richard.levy@lw.com), Ted Dillman (ted.dillman@lw.com), and Jason Gott (jason.gott@lw.com); and (ii) financial advisor to the Ad Hoc Noteholder Group, Alvarez & Marsal Securities, LLC, 600 Madison Avenue, New York, NY 10022, Attn: George Varughese (gvarughese@alvarezandmarsal.com); Ronak Patel (ronak.patel@alvarezandmarsal.com); and Alexander Ferreira (aferreira@alvarezandmarsal.com); (e) counsel to the DIP ABL Agent, Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603, Attn: Randall L. Klein (randall.klein@goldbergkohn.com), Jeremy M. Downs (jeremy.downs@goldbergkohn.com), Eva D. Gadzheva (eva.gadzheva@goldbergkohn.com); and (f)(i) proposed co-counsel to the Creditors' Committee, Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: William R. Baldiga (wbaldiga@brownrudnick.com), Bennett S. Silverberg

(bsilverberg@brownrudnick.com), and Andrew M. Carty (acarty@brownrudnick.com), and Duane Morris LLP, 222 Delaware Avenue, Suite 1600, Wilmington, DE 19801-1659, Attn: Michael R. Lastowski (mrlastowski@duanemorris.com), Sommer L. Ross (slross@duanemorris.com), and Jarret P. Hitchings (jphitchings@duanemorris.com), and (ii) investment banker for the Creditors' Committee, Miller Buckfire & Co., LLC, 787 7th Avenue, 5th Floor, New York, NY 10019, Attn: Matthew Rodrigue (matt.rodrigue@millerbuckfire.com) (collectively, the "Bid Notice Parties").

14.     Unless otherwise provided by another party, the Debtors shall provide the Consultation Parties with copies of all bids received promptly, but in no event later than one (1) business day after receipt by the Debtors.

## The Auction

15.     The Debtors are authorized to commence an Auction on or after March 27, 2018 at 10:00 a.m. (prevailing Eastern Time) at the offices of proposed counsel for the Debtors, Morrison & Foerster LLP, 250 West 55th Street, New York, New York 10019, or such other place, date, or time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids (including any Stalking Horse Bidder), any Qualified Credit Bidder, and the Consultation Parties. If the location, date, or time of the Auction is changed (after consultation with the Consultation Parties), the Debtors shall file a notice at least twenty-four (24) hours prior to the commencement of the Auction indicating such change, and shall serve the same by email or fax on all Qualified Bidders and any creditors that have made a request for such service to Debtors' counsel at least two (2) business days prior to the Auction. The Creditors' Committee, its professionals, and all creditors may attend the Auction. If only one Qualified Bid has been received, then, in consultation with the Consultation Parties, the Debtors may cancel the Auction.

ny-1308136
24191994.1 12/15/2017

The Debtors are authorized, in consultation with the Consultation Parties and subject in all respects to the terms of this Order and the Bidding Procedures, to take actions reasonably necessary to conduct and implement the Auction.

16.     Only (a) the Qualified Bidders that have submitted Qualified Bids (including the Stalking Horse Bidders, if any), (b) any Qualified Credit Bidder (as defined in the Bidding Procedures), and (c) such other parties as the Debtors shall determine, in consultation with the Consultation Parties, will be entitled to make any Bids at the Auction.  The Debtors and their professionals shall direct and preside over the Auction, in consultation with the Consultation Parties.  The Auction shall be transcribed.  Each Qualified Bidder (including the Stalking Horse Bidder, if any) participating in the Auction must confirm that it (x) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (y) has reviewed, understands and accepts the Bidding Procedures, and (z) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale Transaction, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

17.     Subject to the rights of parties in interest under applicable law, the Debtors may, after consultation with the Consultation Parties, (a) select, in their business judgment, pursuant to the Bidding Procedures, the highest or otherwise best offer(s) and the Successful Bidder or Bidders, and (b) reject any bid that, in the Debtors' business judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bidding Procedures or (iii) contrary to the best interests of the Debtors and their estates, creditors, interest holders, or parties-in-interest,

ny-1308136
24191994.1 12/15/2017

including in consideration of potential defaults or events of default under the Debtors' postpetition financing facilities.

18.     Notwithstanding anything to the contrary contained herein, but subject to the terms of the DIP Order, (a) a party shall be entitled to credit bid at the Auction only if such party has made a credit bid (and provided notice to the Creditors' Committee of such credit bid) at least twenty-four (24) hours prior to the commencement of the Auction, and (b) once a Qualified Credit Bid or any other credit bid is submitted, from that point forward the Debtors shall not consult with the party submitting such credit bid in connection with any issue related to the sale of the portion of the Real Alloy Debtors' assets that is the subject of such credit bid (including, without limitation, regarding whether any Qualified Credit Bid (as defined in the Bidding Procedures) is the highest or otherwise best offer and the Successful Bid), unless and until such party revokes such credit bid.

19.     Notwithstanding anything to the contrary contained herein, nothing herein shall modify the terms and conditions of the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code (II) Authorizing Postpetition Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 363, and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* [Docket No. 59] (such order, including as such order may be entered on a final basis, the "DIP Order") or the DIP Documents (as defined in the DIP Order), including, without limitation, in connection with any sales of the Assets.

20.     The Debtors shall file a notice identifying any Successful Bidder, Backup Bidder, identifying the amount of the Successful Bid and the Backup Bid, and indicating whether the Sale Hearing will be held, on the earlier of five (5) business hours after the Auction is completed, or by noon (prevailing Eastern Time) the calendar day after the Auction is completed, and as soon as practicable thereafter, but not more than three (3) business hours thereafter, serve such notice by fax, email, or (if neither is available) overnight mail to all counterparties to Selected Contracts (as defined below) and creditors that have requested in writing service of the same by the date that is two (2) business days prior to the Auction.  Such notice will also indicate that the Debtors will seek to assume and assign the Selected Contracts at the Sale Hearing.

21.     The failure to specifically include or reference any particular provision, section, or article of the attached Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedures, unless such procedures conflict with any provision of this Order, in which case the terms of this Order shall control.

### Assumption and Assignment Procedures

22.     The Assumption and Assignment Procedures are APPROVED, as set forth herein.

23.     On or before January 12, 2018, the Debtors shall file a schedule (the "Contracts Schedule") listing all of the Real Alloy Debtors' executory contracts and unexpired leases (the "Contracts"), which shall include the amounts that the Debtors believe are necessary to assume the Contracts (the "Cure Amounts").  The Contracts Schedule and Cure Amounts shall also be posted on the Debtors' website maintained by Prime Clerk, under the section titled "Sale of Real Alloy Debtors' Assets," which can be found at www.primeclerk.com/realindustry/. On or before the Mailing Date, the Debtors shall also serve a notice (the "Cure Notice"), substantially in the form attached hereto as **Exhibit 3**, on each counterparty to each Contract set forth on the

13

Contracts Schedule (the "Contract Notice Parties"). The Cure Notice shall: (a) state the Cure Amount; (b) notify the non-Debtor party that such party's contract or lease may be assumed and assigned to a purchaser of the Assets at the conclusion of the Sale Hearing; (c) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment of any Contract will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors; and (d) state a deadline by which the Contract counterparty shall file an objection to the Cure Amount or to the assumption and assignment of its Contracts; *provided,* that the inclusion of a contract, lease, or agreement on the Cure Notice, the Contracts Schedule, or the Supplemental Contracts Schedule (as defined below) shall not constitute an admission that such contract, lease, or agreement is an executory contract or lease.[4]

24.    The deadline to object to any Cure Amount or to assumption and assignment on any basis other than an Adequate Assurance Objection (as defined below) shall be the date that is twenty-one (21) calendar days after service of the Cure Notice (the "Cure Objection Deadline") and any such objections must be served on: (a) the Debtors; (b) proposed co-counsel for the Debtors; (c) the U.S. Trustee; (d) counsel to the Ad Hoc Noteholder Group; (e) counsel to the DIP ABL Agent; (f) counsel to the Creditors' Committee; (g) any Stalking Horse Bidders (the "Cure Objection Notice Parties"). Any such objection shall (x) be in writing, (y) state the basis for such objection, and (z) if such objection is to the Cure Amount, state with specificity what cure amount the party to the Contract believes is required (in all cases with appropriate documentation in support thereof).

---

[4] For the avoidance of doubt, all of the Debtors' rights, claims, and causes of action with respect to the contracts and leases listed on a Cure Notice, the Contracts Schedule, or the Supplemental Contracts Schedule are hereby reserved.

14

25.     To the extent that the Debtors wish to amend the Contracts Schedule, the Debtors may file supplements (each, a "Supplemental Contracts Schedule") setting forth the Contracts that have been added to, or removed from, the Contracts Schedule and any modification to the proposed Cure Amount for any Contract.  The Debtors will also serve, in connection therewith, a supplemental Cure Notice (each, a "Supplemental Cure Notice") on each counterparty to a Contract identified on such Supplemental Contracts Schedule.  With respect to any Supplemental Cure Notice, (a) the deadline to object to any Cure Amount or to assumption and assignment on any basis other than an Adequate Assurance Objection shall be the date that is fourteen (14) calendar days after service of such Supplemental Cure Notice (the "Supplemental Cure Objection Deadline"), (b) any such objections must be served on the Cure Objection Notice Parties (provided, that if any Successful Bidder(s) have been selected for any of the Real Alloy Debtors' assets, such objection shall be served on such Successful Bidder(s) and not on the Stalking Horse Bidder(s) for such assets), and (c) any such objection shall be heard at the Sale Hearing (to the extent such hearing has not occurred as of the Supplemental Cure Objection Deadline) or at a later hearing, as determined by the Debtors.

26.     At the Sale Hearing, only those executory contracts and unexpired leases (and the corresponding Cure Amounts) listed on the Contracts Schedule or Supplemental Contracts Schedule (as applicable) that have been selected to be assumed by the Successful Bidder at the Auction (as may be amended in accordance with the terms of the applicable definitive documents, the "Selected Contracts") shall be subject to approval by this Court, and the Debtors' rights with respect to all other contracts are fully reserved.  Objections to the ability of the Successful Bidder to demonstrate adequate assurance of future performance (an "Adequate

ny-1308136
24191994.1 12/15/2017

Assurance Objection") with respect to any Selected Contracts may be filed at any time prior to and must be presented at the Sale Hearing (the "Adequate Assurance Objection Deadline").

27.     Unless a counterparty to any executory contract or unexpired lease files an objection to the Cure Amount or other objection to assumption and assignment on any grounds other than an Adequate Assurance Objection by the Cure Objection Deadline or Supplemental Cure Objection Deadline, as applicable, such counterparty shall be forever barred and estopped from (a) objecting to the Cure Amount, (b) asserting or claiming any Cure Amount against the Debtors, any Successful Bidder, or any other assignee of the relevant contract, other than the Cure Amount listed on the Contracts Schedule or Supplemental Contracts Schedule (as applicable), and (c) raising any other objection or request as to the assumption and assignment of such executory contract or unexpired lease (other than an Adequate Assurance Objection); *provided*, that prior to the date that is fourteen (14) calendar days following entry of an order of the Court approving the assumption of a Selected Contract, the counterparty to such Selected Contract may seek additional amounts on account of any defaults occurring between the service of the Cure Notice or Supplemental Cure Notice, as applicable, and the assumption of such Selected Contract.

28.     Unless a counterparty to any executory contract or unexpired lease makes an Adequate Assurance Objection by the Adequate Assurance Objection Deadline, such counterparty shall be forever barred and estopped from objecting to the assumption and assignment of such executory contract or unexpired lease on the basis of the Successful Bidder's proposed assurance of future performance thereunder.

29.     The Debtors shall be permitted, in consultation with the Consultation Parties, to settle on a consensual basis any dispute regarding a Cure Amount without further order of the

ny-1308136
24191994.1 12/15/2017

Court.  The Debtors shall provide three (3) calendar days' notice of any such compromise to the Consultation Parties, during which time such parties may object.  If no objections are filed within that period, any such objections shall be waived.

### The Sale Hearing

30.    The Sale Hearing to approve the Sale of the Assets shall be held on **March 29, 2018 at 10:00 a.m.** (Prevailing Eastern Time).

31.    Any and all objections, if any, to the Sale to a Stalking Horse Bidder and entry of the Sale Order with respect thereto (a "Sale Objection") must be filed and served on the Debtors, the Consultation Parties, and the U.S. Trustee by 4:00 p.m. (prevailing Eastern Time) on March 22, 2018 (the "Sale Objection Deadline").  Any and all objections to the conduct of the Auction or the terms of a Sale to a Successful Bidder(s) other than the Stalking Horse Bidder (an "Auction Objection") must be made at or before the Sale Hearing (the "Auction Objection Deadline").  Unless otherwise permitted by the Court, any party failing to timely file a Sale Objection or raise an Auction Objection, as applicable, will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the Real Alloy Debtors' right, title and interest in, to, and under their assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the definitive agreement for the Sale.

32.    For informational purposes only, a chart setting forth key dates related to this Order is attached hereto as **Exhibit 1**.

### Related Relief

33.    Except as otherwise set forth herein, any of the deadlines contained in the Bidding Procedures and this Order may be extended by the Debtors in consultation with the Consultation Parties; *provided*, that any of the deadlines contained in the Bidding Procedures and this Order

17

may be shortened or otherwise modified with the consent of the Consultation Parties or upon further order of the Court.

34.    The Debtors, in consultation with the Consultation Parties, are hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established this Order.

35.    Subject to the terms of the DIP Order, nothing in this Order or the Bidding Procedures shall (a) prejudice or impair the rights of the Creditors' Committee to (i) assert a Challenge (as defined in the DIP Order), or (ii) seek, prior to the Challenge Period Termination Date (as defined in the DIP Order), to limit the right of the Prepetition Notes Secured Parties or Prepetition ABL Secured Parties (each as defined in the DIP Order) to credit bid pursuant to section 363(k) of the Bankruptcy Code, or (b) release any causes of action which can be brought by or on behalf of the Debtors' estates.

36.    Copies of the Motion, Bidding Procedures, all exhibits and schedules thereto, this Order, the Auction and Sale Notice, any Stalking Horse Agreement, the form of sale order, the Contracts Schedule, and certain other documents relevant to the Sale Transaction, may be obtained free of charge on a website maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, under the section titled "Sale of Real Alloy Debtors' Assets," which can be found at www.primeclerk.com/realindustry/.

37.    This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

38.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7052, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

ny-1308136
24191994.1 12/15/2017

39.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bid Protections, the Asset Purchase Agreement, the Bidding Procedures and the implementation of this Order.

Dated:    Dec 19    , 2017
       Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

ny-1308136
24191994.1 12/15/2017